## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AIX SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

v.                                                    Case No: 8:19-cv-2533-CEH-AAS

SHANEKA EVERETT and 1207
MLK LIQUORS, INC. d/b/a
HOLLYWOOD NIGHTS SOUTH,

      Defendants.

_____/

### O R D E R

     This matter comes before the Court upon Plaintiff's Motion for Final Summary Judgment (Doc. 40), Defendant Shaneka Everett's Response in Opposition to Plaintiff's Motion for Final Summary Judgment (Doc. 44), Defendant Shaneka Everett's Renewed Cross Motion for Final Summary Judgment (Doc. 42), and Plaintiff's Response to Defendant Shaneka Everett's Renewed Cross-Motion for Final Summary Judgment (Doc. 46).

     AIX Specialty Insurance Company seeks a judgment declaring that it does not have a duty to defend or indemnify its insured in a state court action brought by Shaneka Everett against AIX's insured, in which Everett alleges that she was shot on the insured's premises.

     Upon consideration of the parties' submissions and being fully advised in the premises, Plaintiff's Motion for Final Summary Judgment will be denied, in part, as

to the duty to defend, and denied without prejudice, in part, as to the duty to indemnify, while Defendant Shaneka Everett's Renewed Cross Motion for Final Summary Judgment will be granted, in part, as to the duty to defend, and denied without prejudice, in part, as to the duty to indemnify.

## I.   BACKGROUND

### A. Undisputed Facts[1]

At all times material, AIX Specialty Insurance Company ("AIX") had in full force and effect a surplus commercial general liability policy of insurance, policy number L1JA78060300, with effective dates of November 13, 2015 through November 13, 2016 (the "Policy"), which was issued to 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South ("MLK Liquors"). Doc. 49 ¶1. The Policy's declarations list "1207 MLK Liquors, Inc. d/b/a Hollywood Nights South" as a named insured. *Id.* The Policy provides, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

 **1.  Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including exhibits, as well as the parties' Stipulation of Agreed Material Facts.

> damages for "bodily injury" or "property damage" to which
> this insurance does not apply.

*Id.* at ¶2; Doc. 40-1 at 34.

The Policy also contains Endorsement 801-0053 06 13, entitled "Firearms

Exclusion" (the "Firearms Exclusion"), which provides:

> The following exclusion is added to **SECTION 1 –
> COVERAGES, COVERAGE A BODILY INJURY AND
> PROPERTY DAMAGE LIABILITY,** Paragraph **2.
> Exclusions**, **SECTION I – COVERAGES, COVERAGE B
> PERSONAL AND ADVERTISING INJURY LIABILITY,**
> Paragraph **2. Exclusions** and **SECTION I – COVERAGES,
> COVERAGE C MEDICAL PAYMENTS,** Paragraph **2.
> Exclusions:**
>
> It is understood that no coverage is afforded by this policy for
> any injury, death, claims, or actions occasioned directly or
> indirectly or as an incident to the discharge of firearms by person
> or persons on or about the insured premises.

Doc. 49 ¶3; Doc. 40-1 at 29.

On or about September 28, 2018, Shaneka Everett ("Everett") initiated an

action against MLK Liquors in the Circuit Court of the Sixth Judicial Circuit, in and

for Pinellas County, Florida (the "Underlying Litigation"). Doc. 49 ¶4. In the

Underlying Litigation, Everett alleges that on or about May 23, 2016, she was shot by

a "Projectile (to wit: a bullet)" at the premises operated by MLK Liquors. *Id.* at ¶5.

Everett also alleges that she has suffered, and will continue to suffer, damages as a

result of the injuries sustained in the "criminal attack." *Id.* at ¶6. AIX is providing

MLK Liquors with a defense in the Underlying Litigation, subject to a reservation of

rights, which identifies the provisions and exclusions set forth above. *Id.* at ¶7.

**B. Amended Complaint and Procedural Background**

3

In its one-count amended complaint (the "Amended Complaint"), AIX seeks the Court's entry of a declaratory judgment under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Doc. 27 ¶¶8, 23. AIX contends that it does not have a duty to defend or indemnify MLK Liquors or "any other purported insured" in connection with the Underlying Litigation because the Firearms Exclusions in the Policy excludes coverage. *Id.* at ¶19. As such, AIX requests the Court to declare, as a matter of law, that: (1) AIX has no duty to defend MLK Liquors "or any other purported insured" in connection with the Underlying Litigation; and (2) AIX has no duty to indemnify MLK Liquors "or any other purported insured" in connection with the Underlying Litigation. *Id.* at 5.

AIX and Everett now separately seek summary judgment and respond in opposition to the other's party summary judgment motion. Docs. 40, 42, 44, 46. The Clerk has entered default against MLK Liquors. Doc. 39 at 1. The motions for summary judgment are ripe for the Court's consideration.[2]

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and

---

[2] Although the Case Management and Scheduling Order provides the parties with leave to file a reply, neither AIX nor Everett filed a reply. Doc. 36 at 6.

identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But, a party cannot defeat summary judgment by relying on conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).[3] Summary judgment should be granted only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

---

[3] Unpublished decisions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.  DISCUSSION

In moving for summary judgment, AIX requests the Court to declare, as a matter of law, that it does not have a duty to defend or indemnify MLK Liquors "or any other purported insured" in connection with the Underlying Litigation under the Policy. Doc. 40 at 9. Everett also seeks summary judgment, requesting the Court to enter an order granting summary judgment against AIX on its claim and finding that

AIX owed and owes a duty to both defend and indemnify MLK Liquors against the claim in the Underlying Litigation.[4] Doc 42 at 8.

The Federal Declaratory Judgment Act provides, in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

22 U.S.C. § 2201.

The Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. *Aguilera v. Dist. Dir.*, 423 F. App'x 916, 918 (11th Cir. 2011). Here, the complaint invokes the Court's diversity jurisdiction. Doc. 27 ¶¶3–6, 15. Therefore, the Court applies the substantive law of the forum state, Florida. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Florida law provides that an insurer's duty to defend is separate and distinct from its duty to indemnify. *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997). The duty to defend an insured is broader than the duty to indemnify an insured. *Aetna Ins. Co. v. Borrell-Bigby Elec. Co., Inc.*, 541 So. 2d 139, 141 (Fla. 2d DCA 1989). If there is no duty to defend, there is no duty to indemnify. *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906

---

[4] Everett also seeks an award of her reasonable attorneys' fees and costs associated with "having to defend this action." Doc. 42 at 8. This separate request for attorneys' fees and costs is not properly included in Everett's motion for summary judgment. To the extent that Everett seeks attorney's fees and costs, she must pursue such request in a separate motion. *See* Local R. M.D. Fla. 3.01(a). As such, her request for attorneys' fees and costs is denied, without prejudice.

(Fla. 2d DCA 2009). Thus, because the duty to defend is broader than the duty to indemnify and the duty to indemnify cannot exist without the duty to defend, the Court will examine the duty to defend before examining the duty to indemnify.

## A. Duty to Defend

### i. Applicable Law

The Court begins with the duty to defend. Under Florida law, an insurer's duty to defend an insured "depends *solely* on the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid-Continent Casualty Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (emphasis in original) (internal quotation marks omitted); *see Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005) ("The duty to defend must be determined from the allegations in the complaint."); *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9–10 (Fla. 2004) ("[A]n insurer's obligation to defend is determined solely by the claimant's complaint if suit has been filed."). Indeed, "the determination of an insurer's duty to defend falls under the so-called 'eight corners rule,'" which refers to the four corners of the underlying complaint and the four corners of the insurance policy. *Addison Ins. Co. v. 4000 Island Boulevard Condo. Assoc., Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017) (citing *Mid-Continent Casualty Co. v. Royal Crane, LLC*, 169 So. 3d 174, 182 (Fla. 4th DCA 2015)). This rule "provides that an insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (quoting *Jones*, 908 So. 2d at 442). In other words, "[i]f the allegations in the complaint

state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit." *State Farm Fire & Casualty Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580–81 (Fla. 4th DCA 2000)).

"[T]he insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Jones*, 908 So. 2d at 443. "If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Casualty Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011). A court must resolve any doubt regarding the duty to defend in favor of the insured. *Steinberg*, 393 F.3d at 1230 (citing *Gold Coast Marine Distribs.*, 771 So. 2d at 581–82).

Further, examining an insurance policy under the "eight corners rule" implicates rules of construction. "It is well settled that the construction of an insurance policy is a question of law for the court." *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). "Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc.*, 913 So. 2d

at 532 (internal quotation marks omitted). An undefined term in an insurance policy should be given its plain and ordinary meaning, and courts may examine legal and non-legal dictionary definitions to ascertain such a meaning. *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017). However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners Ins. Co.*, 756 So. 2d at 34. "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter . . . ." *Id.* "Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured." *Id.* "In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id.*

ii. *Analysis*

The Court must examine whether Everett's complaint in the Underlying Litigation alleges facts that fairly and potentially bring her injury within the Policy's coverage so as to give rise to the duty to defend. Beginning with the Policy, the parties agree that AIX provides a true and accurate copy of the Policy with its motion for summary judgment. Doc. 49 ¶1. Under "Coverage A – Bodily Injury and Property Damage Liability" of the Policy, AIX must "pay those sums" that MLK Liquors becomes "legally obligated to pay as damages because of 'bodily injury'" to which the insurance applies. *Id.* at ¶2. The Policy provides that AIX has the right and duty to defend MLK Liquors against any lawsuit seeking those damages. *Id.* The Policy defines "bodily injury" as meaning "bodily injury, sickness or disease sustained by a

10

person, including death resulting from any of these at any time." Doc. 40-1 at 46. The Policy applies to "bodily injury" only where "bodily injury" is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," that takes place in the "coverage territory," which is defined, in relevant part, as the United States of America. *Id.* at 34, 48. Further, the "bodily injury" must occur during the policy period of November 13, 2015, to November 13, 2016. *Id.* at 1, 34.

However, AIX does not have a duty to defend MLK Liquors against any lawsuit for "bodily injury" damages to which the Policy does not apply. Doc. 49 ¶2. To that end, the Policy specifies several exclusions. Doc. 40-1 at 35–39. The Firearms Exclusion, which is an endorsement to the Policy, adds an exclusion. Doc. 40-1 at 29. The Firearms Exclusion provides:

> It is understood that no coverage is afforded by this policy for any injury, death, claims, or actions occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises.

*Id.*; Doc. 49 ¶3.

Turning to the complaint in the Underlying Litigation, the parties stipulate that Everett alleges in the complaint, which AIX provides with its motion for summary judgment, that she was shot by a "Projectile (to wit: a bullet)" at the premises operated by MLK Liquors on or about May 23, 2016.[5] Doc. 49 ¶5. Everett also alleges that she

---

[5] Thus, although Everett alleges in the complaint in the Underlying Litigation that she was shot "at the property located at 1207 Martin Luther King Blvd., St. Petersburg, Florida 33703," Doc. 40-2 ¶6, which differs from the address of "1205-1207 Dr MLK St South, Saint Petersburg, FL 33750" provided for the insured premises in the Policy's declarations, Doc.

suffered, and will continue to suffer, "damages as a result of the injuries sustained in the criminal attack." *Id.* at ¶6; Doc 40-2 ¶7. Indeed, she alleges that she "suffered serious life-threatening bodily injuries" that resulted in, among other things, pain and suffering, disability, disfigurement, incurred medical expenses, and loss of earnings. Doc. 40-2 ¶21. Everett's complaint lodges one negligence claim against MLK Liquors. *Id.* at ¶¶8–21. In support of this claim, Everett generally alleges that MLK Liquors owed a duty to its invitees and the public to exercise reasonable and ordinary care to keep its premises in a condition reasonably safe for use by invitees and the public. *Id.* at ¶9. Everett alleges that MLK Liquors breached its duty to exercise reasonable care for the protection and safety of its invitees and the public in numerous ways, such as failing to provide adequate security and failing to warn its invitees and the public of the nature of the surrounding area when it knew or should have known that numerous criminal incidents of a similar nature to this incident had previously occurred on MLK Liquors's premises. *Id.* at ¶14. Everett claims that MLK Liquors's negligence proximately caused her injuries and "directly led to the criminal attack and shooting" of her. *Id.* at ¶19. Consequently, Everett demands judgment against MLK Liquors for damages in an amount exceeding "the jurisdictional limits" of the state court. Doc. 40-2 at 7.

---

40-1 at 4, the parties agree that Everett alleges in the Underlying Litigation that she was shot at the premises operated by MLK Liquors. Further, no party argues that any "discharge of firearms by person or persons" did not occur on or about the insured premises.

Everett's allegations state facts that fairly and *potentially* bring her purported injury within the Policy's coverage so as to give rise to AIX's duty to defend MLK Liquors. As highlighted above, the Policy provides that AIX must pay those amounts that MLK Liquors becomes legally obligated to pay due to "bodily injury" to which the insurance applies, and AIX must defend MLK Liquors against any lawsuit seeking such damages. To that end, Everett sues MLK Liquors for damages for "bodily injury" that she allegedly sustained at MLK Liquors's premises. According to her allegations, Everett suffered "bodily injury"—defined in the Policy as meaning bodily injury sustained by a person—on MLK Liquors's premises, as she alleges that she was shot by a bullet and that she sustained injuries from this "criminal attack," with her injuries described, in relevant part, as pain and suffering, disability, and disfigurement. Everett also alleges that this shooting occurred on May 23, 2016, which falls within the policy period.

This "bodily injury" was also caused by an "occurrence" within the United States of America. As discussed, the Policy defines "occurrence," in relevant part, as an "accident." The Policy does not define "accident." The Court must give this undefined term its plain and ordinary meaning, and the Court may look to dictionary definitions to ascertain the meaning. The Merriam-Webster Dictionary offers the following definitions for "accident": "an unforeseen or unplanned event or circumstance"; "an unfortunate event resulting especially from carelessness or ignorance." Merriam-Webster Dictionary, *Accident*, https://www.merriam-webster.com/dictionary/accident (last visited May 20, 2021). Further, "where the

13

term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damages neither expected nor intended from the standpoint of the insured." *State Farm Fire & Casualty Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998).

Everett alleges that MLK Liquors's negligence caused her injuries "and directly led to the criminal attack and shooting" in that (1) there was inadequate or nonexistent "visible deterrence" to prevent this "criminal assault"; (2) there was inadequate or nonexistent "physical deterrence" to prevent this "criminal assault"; (3) "criminals could carry out physical assaults" on MLK Liquors's premises without fear of being caught, discovered, or prosecuted; and (4) an atmosphere that facilitated "the commission of crimes against persons" was created at MLK Liquors's premises. Doc. 40-2 ¶19. Thus, according to Everett, as a direct and proximate result of MLK Liquors's negligence, she suffered bodily harm. *Id.* at ¶¶20–21. Therefore, Everett alleges that she suffered "bodily injury" as a result of an unfortunate event resulting from MLK Liquors's carelessness regarding the security of the premises.

In further support, Florida law provides that the Policy's use of the undefined term "accident" encompasses injuries or damages not expected nor intended from MLK Liquors's standpoint. Although she alleges that MLK Liquors knew, or reasonably should have known, of certain conditions, Everett does not allege that MLK Liquors expected or intended her injuries. To the contrary, her allegations

14

indicate that her injury was neither expected nor intended from the standpoint of MLK Liquors, but resulted from MLK Liquors's negligence.[6]

However, AIX argues that it does not have a duty to defend MLK Liquors "or any other purported insured" in connection with the Underlying Litigation because the Firearms Exclusion excludes coverage for Everett's claim.[7] Doc. 40 at 9. Citing to a St. Petersburg Police Department supplemental report provided by Everett with her prior motion for summary judgment, which the Court denied without prejudice as premature, Doc. 21 at 4, AIX contends there is no genuine dispute of material fact that "multiple firearms were discharged at or around the time of the underlying shooting," Doc. 40 at 3 n.2. AIX nonetheless claims that the purported discharge of multiple firearms "is not dispositive of the instant issue because there is caselaw applying the [F]irearms [E]xclusion when only one firearm was involved." *Id.* AIX points to three

---

[6] Relatedly, reviewing the Policy as a whole to give every provision its full meaning and effect reveals that the Policy contains an endorsement entitled "Exclusion – Intentional Acts," which operates to exclude coverage for "bodily injury" that is "excepted or intended from the standpoint of the insured or from the standpoint of any customer or patron of the insured." Doc. 40-2 at 26. In moving for summary judgment, AIX does not argue that Everett's allegations demonstrate that the exclusion is applicable or that the exclusion is otherwise applicable.

[7] In its motion for summary judgment, AIX asserts that "an issue has arisen in the [U]nderlying [L]itigation as to the proper name of the business defendant," as an entity named "MLK Liquors, Inc.," may have "operat[ed] the establishment on the night at issue." Doc. 40 at 2 n.1. Everett does not address this assertion. No party has provided the Court with any further information regarding this "issue." Critically, as explained herein, the Court's determination of whether AIX has a duty to defend MLK Liquors involves an examination of Everett's complaint and the Policy. Here, the provided copy of Everett's complaint names MLK Liquors as the defendant, and the Policy lists MLK Liquors as a named insured. As such, the focus is on MLK Liquors as the named insured and the defendant named in the Underlying Litigation.

federal district court cases in which the courts found that a firearms exclusion identical to this Firearms Exclusion precluded coverage. *Id.* at 6–9. Because those courts found that coverage was precluded, AIX argues that the Court should also find that the Firearms Exclusion bars coverage. *Id.* at 9.

In response, Everett challenges the applicability of the Firearms Exclusion and distinguishes the cases cited by AIX. Doc. 44 at 9–14. She contends that she "has only ever averred (and the undisputed material facts and evidence corroborate) that her injuries and subsequent claim and action" against MLK Liquors "relate to a single projectile that was fired by a single firearm that impacted her body." *Id.* at 16. Everett points to a medical record to argue that she "suffered a single gunshot wound." *Id.* at 3.

Similarly, in seeking summary judgment, Everett reiterates that the Firearms Exclusion is inapplicable because it addresses injuries resulting from the discharge of multiple firearms. Doc. 42 at 11–12. Everett again distinguishes cases cited by AIX and points to other exclusions in the Policy, conceding that although she presents "substantially similar arguments" as the insureds in those cases, she provides "more support than they did" because she points to the nature of MLK Liquors's business and other exclusionary endorsements. *Id.* at 12–18. In response, AIX emphasizes the applicability of the Firearms Exclusion through continued reliance on the previously cited federal district court cases, argues that some of these cases defeat Everett's argument regarding her claim sounding in negligence, and claims that her review of other exclusions deflects attention from the language of the Firearms Exclusion. Doc.

16

46 at 6–10. AIX reiterates that the Firearms Exclusion bars coverage "where a single firearm inflicted the plaintiff's injury," based on other cases. *Id.* at 11–12.

In relying on evidence and heavily depending on other cases to argue whether AIX has a duty to defend MLK Liquors in the Underlying Litigation, the parties largely misunderstand the governing analysis. Determining whether AIX has a duty to defend MLK Liquors in the Underlying Litigation depends solely upon Everett's allegations in the state court complaint and the language of the Policy, not the evidence submitted by the parties.[8] The Court must look to the allegations of Everett's complaint in the Underlying Litigation to determine whether her allegations show the applicability of the Firearms Exclusion. *See State Farm Fire & Casualty Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003) ("However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend.").

---

[8] There are exceptions to the general rule that a court, in considering whether a duty to defend exists, must look to the complaint and the insurance policy. *Feldman v. Imperium Ins. Co.*, No. 8:14-cv-1637-T-30EAJ, 2015 WL 5854153, at *7–8 (M.D. Fla. Oct. 5, 2015). One notable exception stems from *Nationwide Mutual Fire Insurance Company v. Keen*, in which the Fourth District Court of Appeal held that "if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending." 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995). Here, while Everett does not dispute that the St. Petersburg Police Department supplemental report "suggests that multiple firearms were discharged on the date/time in question," she disagrees with AIX regarding the import of the report and points to a medical record to argue that Everett sustained injuries from the discharge of a single firearm. *See* Doc. 44 at 2, 9, 13; Doc. 42 at 11. Even if the report could be deemed uncontroverted, the Court is not persuaded that the report places Everett's claim outside of coverage, and no argument is made regarding Everett's "attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage" in accordance with this exception. *Id.* Similarly, no argument is made regarding the applicability of other exceptions recognized under Florida law. In the absence of an argument regarding the applicability of these exceptions, the Court does not find them applicable.

Notwithstanding the parties' misguided focus in their papers, the Court may resolve the question presented because the existence of a duty to defend constitutes a legal question for the Court, amenable to resolution on a motion for summary judgment. *U.S. Liab. Ins. Co. v. Kelley Ventures, LLC*, 137 F. Supp. 3d 1312, 1316 (S.D. Fla. 2015).

Everett's allegations do not show the applicability of the Firearms Exclusion for purposes of the duty to defend analysis. The Firearms Exclusion excludes coverage for any injury that is "occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises." Doc. 49 ¶3. The Court must construe this language of the Firearms Exclusion according to its plain meaning. As an exclusion, the Firearms Exclusion must be "strictly construed." *Demshar v. AAACon Auto Transp., Inc.*, 337 So. 2d 963 (Fla. 1976) ("Exclusionary clauses in liability insurance policies are always strictly construed."). Significantly, the Firearms Exclusion uses the plural form of "firearm" and distinguishes between the discharge of firearms by "person" and the discharge of firearms by "persons" by utilizing "or," a disjunctive. The Policy also does not define "firearms." The Merriam-Webster Dictionary defines "firearm" as "a weapon from which a shot is discharged by gunpowder—usually used of small arms." Merriam-Webster Dictionary, *Firearm*, https://www.merriam-webster.com/dictionary/firearm (last visited May 20, 2021). Additionally, in interpreting a firearms exclusion identical to the Firearms Exclusion, one court noted that "occasioned" means to "bring about" or "cause." *Tower Ins. Co. of N.Y. v. Lormejuste*, No. 4:11cv226-RS/CAS, 2012 WL 1986881, at *7 (N.D. Fla.

Apr. 23, 2012), *report and recommendation adopted*, 2012 WL 1986827, at *1 (N.D. Fla. June 4, 2012).

By its plain meaning, this exclusion applies only to the discharge of firearms by a person and the discharge of firearms by persons. Neither AIX nor Everett challenges the language of the Firearms Exclusion as ambiguous. AIX concedes that the Firearms Exclusion "unambiguously excludes coverage for an injury or claim that is occasioned: (1) directly; (2) indirectly; or (3) as an incident to, the discharge of firearms by person or persons on or about the insured premises" before unpersuasively pointing to other district court opinions applying exclusions identical to the Firearms Exclusion. Doc. 46 at 10–13; *see* Doc. 40 at 9. Although Everett attempts to ascertain the purpose behind AIX's inclusion of the Firearms Exclusion, offers context regarding MLK Liquors's operations and services, and references other exclusions in the Policy, she first relies upon the plain language of the Firearms Exclusion to argue that the Firearms Exclusion contemplates the discharge of multiple firearms, describing the language as "unambiguous," Doc. 42 at 11–18; Doc. 44 at 9, 13.

Thus, the Policy excludes coverage for any injury that is brought about or caused directly or indirectly or as an incident to the discharge of weapons from which shots are discharged by gunpowder by person or persons on or about the insured premises. The parties stipulate that Everett alleges that she was shot by a "Projectile (to wit: a bullet)" at the premises operated by MLK Liquors and that she has suffered, and will continue to suffer, damages as a result of the injuries she sustained in this "criminal attack." Doc. 49 ¶6. Everett's allegations do not specify the "firearms"

19

involved in the purported shooting of Everett. As highlighted above, "firearm" typically refers to "small arms." Thus, whether Everett was injured by the discharge of "small arms" is unclear. More significantly, while Everett alleges that she was shot by a bullet, she does not allege that her injury was brought about or caused, whether directly, indirectly, or as an incident to, the discharge of *weapons* from which shots were discharged by gunpowder by person or persons on MLK Liquors's premises. The allegations do not show the applicability of the Firearms Exclusion. The Firearms Exclusion does not operate to exclude coverage such that AIX does not have a duty to defend MLK Liquors. Further, any finding by a district court in another case that an exclusion identical to the Firearms Exclusion barred coverage for an injury that resulted from the discharge of a single firearm does not persuasively demonstrate that the Firearms Exclusion bars coverage for Everett's alleged injury in the Underlying Litigation. Even if AIX could successfully argue that Everett's allegations in the Underlying Litigation leave some doubt as to whether the Firearms Exclusion applies, Florida law demands that any doubts regarding AIX's duty to defend be resolved in favor of MLK Liquors. *Steinberg*, 393 F.3d at 1230.

Consequently, Everett's complaint in the Underlying Litigation, fairly read, alleges facts which create *potential* coverage under the Policy so as to give rise to the duty to defend. Therefore, the duty to defend is triggered, and AIX has a duty to defend MLK Liquors in the Underlying Litigation. Accordingly, AIX's motion for summary judgment is due to be denied as to the duty to defend, and Everett's motion for summary judgment is due to be granted as to the duty to defend.

### B. Duty to Indemnify

Having determined that Everett's allegations in the Underlying Litigation trigger AIX's duty to defend MLK Liquors, the Court turns to the duty to indemnify.

While the allegations in the underlying complaint trigger the duty to defend, the duty to indemnify "'is determined by the underlying facts adduced at trial or developed through discovery during the litigation.'" *Stephens*, 749 F.3d at 1324 (quoting *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. 4th DCA 2006)). Thus, "one looks at the actual facts, not only those that were alleged in the state court complaint." *Id.* "The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims." *J.B.D. Const., Inc. v. Mid-Continent Casualty Co.*, 571 F. App'x 918, 927 (11th Cir. 2014) (applying Florida law). A declaration as to the duty to indemnify is premature, "unless there has been a resolution of the underlying claim." *Northland Casualty Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001); *see Fidelity Nat'l Prop. & Casualty Co. v. Boardwalk Condo. Ass'n, Inc.*, No. 3:07cv278/MCR/EMT, 2010 WL 1911159, at *7 (N.D. Fla. May 12, 2010) ("[T]he duty to indemnify is not ripe for adjudication in a declaratory judgment action until there is a factual determination that the insured is liable in the underlying suit.").

Neither AIX nor Everett recognizes the legal distinction between the duty to defend and the duty to indemnify. Significantly, there is no indication of a final judgment or settlement in, or a final resolution of, the Underlying Litigation. Indeed,

the parties stipulate that "AIX *is providing* [MLK Liquors] with a defense in the Underlying Litigation . . . ." Doc. 49 ¶7 (emphasis added). In the absence of any indication that there has been a resolution of Everett's claim in the Underlying Litigation, any declaration regarding the duty to indemnify would be premature.[9] As such, AIX's motion for summary judgment and Everett's motion for summary judgment are each due to be denied, without prejudice, as premature, as to the duty to indemnify. The Court will stay the case as to AIX's request for a judgment declaring that it has no duty to indemnify MLK Liquors in the Underlying Litigation. *See*, *e.g.*, *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1365 (S.D. Fla. 2019); *see also Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1342 (M.D. Fla. 2016); *Evanston Ins. Co. v. Gaddis Corp.*, 145 F. Supp. 3d 1140, 1153 (S.D. Fla. 2015).

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion for Final Summary Judgment (Doc. 40) is **DENIED**, **in part**, and **DENIED without prejudice**, **in part**. The motion is **denied** as to AIX Specialty Insurance Company's request for a declaration that it does not have a duty to defend 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South "or any other purported insured" in the Underlying Litigation. The

---

[9] An exception to this principle is "if the court can determine that the allegations in the complaint could under *no circumstances* lead to a result which would trigger the duty to indemnify." *Northland*, 160 F. Supp. 2d at 1360 (emphasis added). But no argument is made that this exception is applicable here. Thus, the Court does not consider this exception applicable.

motion is **denied without prejudice** as premature as to AIX Specialty Insurance Company's request for a declaration that it does not have a duty to indemnify 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South "or any other purported insured" in the Underlying Litigation.

2.  Defendant Shaneka Everett's Renewed Cross Motion for Final Summary Judgment (Doc. 42) is **GRANTED**, **in part**, and **DENIED without prejudice**, **in part**. The motion is **granted** to the extent that the Court finds, based on the allegations of Shaneka Everett's complaint in the Underlying Litigation, that AIX Specialty Insurance Company has a duty to defend 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South in the Underlying Litigation. The motion is **denied without prejudice** as premature as to Shaneka Everett's request for the Court to enter an order finding that AIX Specialty Insurance Company owed and owes a duty to indemnify 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South in the Underlying Litigation and **denied without prejudice** as to Shaneka Everett's request for attorneys' fees and costs.

3.  This case is **STAYED** as to AIX Specialty Insurance Company's request for a judgment declaring that it has no duty to indemnify 1207 MLK Liquors, Inc. d/b/a Hollywood Nights South "or any other purported insured" in the Underlying Action pending resolution thereof. The parties shall file a joint status report every one hundred twenty (120) days regarding the status of the

Underlying Litigation, beginning on October 15, 2021. Any party may move
to lift the stay or reopen the case at any time, as appropriate.

4.  The Clerk is directed to **administratively close this case**.

**DONE AND ORDERED** in Tampa, Florida on June 16, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

24